# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DESTINY COTTOY,

      Plaintiff,

v.                                Case No. 8:23-cv-1652-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

      Defendant.

---

## **OPINION AND ORDER**[2]

### **I.  Status**

Destiny Cottoy ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of Crohn's disease, major depressive disorder, generalized anxiety, and post-traumatic stress disorder. Transcript of Administrative Proceedings (Doc. No. 8; "Tr." or "administrative transcript"), filed September 15, 2023, at 97, 104,

---

[1] Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed September 15, 2023; Reference Order (Doc. No. 12), entered September 18, 2023.

215. Plaintiff protectively filed an application for SSI on July 2, 2021, alleging a disability onset date of August 12, 2007.[3] Tr. at 194-99. The application was denied initially, Tr. at 96, 97-102, 113-16, and upon reconsideration, Tr. at 103, 104-11, 121-22.

On August 30, 2022, an Administrative Law Judge ("ALJ") held a hearing,[4] during which Plaintiff appeared and represented herself. Tr. at 76-95. On March 1, 2023, the ALJ issued a Decision finding Plaintiff not disabled since the date the SSI application was filed. See Tr. at 11-19.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted additional medical evidence and a brief authored by her newly-obtained representative. See Tr. at 2, 5-6 (Appeals Council exhibit list and orders), 61-64 (brief), 73-75 (medical evidence), 185-90 (request for review and cover sheets). On June 23, 2023, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On July 23, 2023, Plaintiff commenced this action through counsel under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely

---

[3] Although actually filed on July 12, 2021, see Tr. at 194, the protective filing date of the application is listed elsewhere in the administrative transcript as July 1, 2021, see Tr. at 97, 104.

[4] The hearing was held via videoconference with Plaintiff's consent. Tr. at 78, 166, 179.

filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in 1) "fail[ing] to properly consider the opinion of [Billie Jo] Hatton[, Ph.D.] when determining [Plaintiff's] mental functional capacity"; 2) "fail[ing] to develop the record"; and 3) "fail[ing] to consider the combination of impairments." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 23; "Pl.'s Mem."), filed February 14, 2024, at 3, 12, 15. On April 12, 2024, Defendant responded to Plaintiff's arguments by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 28; "Def.'s Mem.").

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further development of the record on the effects of Plaintiff's mental impairments. On remand, further development may impact the Administration's consideration of the remaining issues on appeal.[5] For this reason, the Court need not address the parties' arguments on those issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health

---

[5] The undersigned does discuss the ALJ's findings on Dr. Hatton's opinion but only as they relate to the undeveloped record.

& Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 13-19. At step one, the ALJ determined Plaintiff "has not engaged in substantial

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

gainful activity since July 1, 2021, the application date." Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairment: Crohn's disease." Tr. at 13 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") "to perform the full range of light work as defined in 20 CFR [§] 416.967(b)." Tr. at 15 (emphasis omitted). At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 18 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("23 years old . . . on the date the application was filed"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 18 (some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . since July 1, 2021, the date the application was filed." Tr. at 19 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given

to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff, noting that she represented herself at the hearing, argues the ALJ erred in failing to fully and fairly develop the record by: 1) failing to request

a mental functional capacity statement from Dr. Hatton, the psychologist who examined Plaintiff at the request of the SSA; 2) failing to obtain records from Plaintiff's treating mental health therapist; and 3) failing to obtain records from Plaintiff's primary care physician (who likely managed Plaintiff's mental health at least to a degree). Pl.'s Mem. at 12-15. According to Plaintiff, these failures created gaps in the evidence that resulted in prejudice. Id. at 15. Responding, Defendant contends "the record contained sufficient evidence for the ALJ to make an informed decision about Plaintiff's mental impairments and her RFC." Def.'s Mem. at 15. Defendant also argues that Plaintiff does not demonstrate evidentiary gaps or clear prejudice that are required to remand the matter. Id. at 17.

A claimant has a statutory right to be represented at a hearing before an ALJ. 42 U.S.C. § 406; see also Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982). The Commissioner "has a duty to notify [the] claimant of his or her right to [representation] before the hearing." Smith, 677 F.2d at 828 (citation omitted). Though the right to be represented may be waived by the claimant, the waiver must be knowing and voluntary. See Brown, 44 F.3d at 935; Smith, 677 F.2d at 828. "[S]uch a waiver must establish, at some point, that the claimant is properly apprised of his [or her] options concerning representation to be

effective." Smith, 677 F.2d at 828 (citation and internal quotation marks omitted).

"When an unrepresented claimant unfamiliar with administrative hearing procedures appears before an ALJ, the ALJ is under an obligation to develop a full and fair record; i.e. the record must disclose that there has been a full and fair hearing." Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (emphasis and citation omitted). If the claimant did not validly waive the right to be represented, "the ALJ is under a 'special duty' to develop a full and fair hearing by conscientiously probing into all relevant facts." Id. n.2 (citations omitted). "This duty requires, essentially, a record which shows that the claimant was not prejudiced by the lack of [representation]." Id. (quoting Smith, 677 F.2d at 829). In examining whether a claimant was prejudiced by the lack of representation, a reviewing court must ensure the ALJ "scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] for all the relevant facts." Brown, 44 F.3d at 934-35 (quoting Smith, 677 F.2d at 829).

Conversely, if the claimant validly waived the right to be represented, the claimant must show "clear prejudice or unfairness" caused by the lack of representation to prove that he was denied a full and fair hearing.[7] Kelley, 761

---

[7] The United States Court of Appeals for the Eleventh Circuit has stated the following regarding the two standards and their application:

(Continued…)

F.2d at 1540 n.2 (quoting Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. 1981)). Of particular importance is "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Brown, 44 F.3d at 935. Missing medical documentation or documentation of vocational services supporting a claim of disability can be prejudicial, especially when it relates to treatment occurring near or during the period in which the claimant is eligible for disability insurance benefits. See id.

Here, Plaintiff does not raise as an issue whether she validly waived her right to representation at the hearing. The SSA did send Plaintiff correspondence prior to the hearing that advised Plaintiff of her right to representation, explained what a representative could do, explained possible rates a representative could charge, and included a list of potential representatives along with contact information. See, e.g., Tr. at 150-60. Plaintiff appeared at the hearing without counsel or a representative, so the ALJ engaged in a colloquy again advising Plaintiff of her right and asking Plaintiff if she wished to proceed or to take some time to obtain a representative. Tr. at 76, 79-81. Plaintiff asked, "Can I do this today?," Tr. at 81, indicating she would

---

These two standards appear to differ only in degree. Both require that the ALJ fully develop the record. Both require a showing of prejudice to necessitate a remand to the [Commissioner] for reconsideration. The only discernable difference is that a more specific showing of prejudice is required if [a] claimant did not waive his [or her] right to [representation].

Kelley, 761 F.2d at 1540 n.2.

like to proceed. So, the ALJ proceeded with the hearing. Tr. at 81. Under the circumstances, and in light of Plaintiff's election not to seriously contest the validity of her waiver, the undersigned assumes without deciding that Plaintiff knowingly and voluntarily waived her right to representation at the hearing.

The ALJ, however, still had a duty to fully and fairly develop the record. This, the ALJ did not adequately do. At the time of the hearing, the record did not contain any treating mental health evidence or primary physician evidence. The SSA did send Plaintiff for a mental consultative examination that was performed by Dr. Hatton. See Tr. at 427-30. The ALJ, however, declined to accept Dr. Hatton's opinion[8] in pertinent part because it "appears to be based on [Plaintiff's] subjectively reported symptoms and her timid and anxious presentation," and "such a presentation was an anomaly, as [Plaintiff] presented with normal mental status examinations throughout the remainder of the record." Tr. at 18. These "normal mental status examinations" were almost entirely noted by Plaintiff's gastroenterology specialists as part of routine overall exams. See, e.g., Tr. at 286-413, 439-555, 558-61.

The ALJ in declining to accept Dr. Hatton's opinion also stated that he "did not provide a specific [RFC] assessment," Tr. at 18, but it does not appear

---

[8] The ALJ did not refer to Dr. Hatton by name, instead referring to "the psychological consultative examiner" and citing Exhibit 3F. Tr. at 18. This exhibit is Dr. Hatton's opinion. Tr. at 427-30.

the SSA asked him to provide such a statement. So, the ALJ's observation that Dr. Hatton's prognosis for Plaintiff's mental state as it relates to working "is not useful in resolving the issues presented in this case," Tr. at 18, is a self-created problem by the SSA.

Moreover, the ALJ was on clear notice from Dr. Hatton's report that Plaintiff had been receiving psychotherapy from Emily Mathis in Washington State until May of 2021 (when Plaintiff moved to Florida) and had been "diagnosed with PTSD, major depression and generalized anxiety disorder," see Tr. at 428, but the ALJ did not obtain these records. The ALJ was also aware from Dr. Hatton's report that Plaintiff's then-current primary care physician was "Dr. Mary Thomas," Tr. at 428, but the ALJ did not obtain these records.

The ALJ did, post-hearing, obtain one record from Jose G. Torres, M.D. that documents treating Plaintiff for anxiety on July 26, 2022, explains self-reported medications, states Plaintiff "is presently seeing a counselor every 2 weeks," and indicates Plaintiff's counselor "advised her to talk to her primary care physician about getting a prescription for anxiety." Tr. at 591; see Tr. at 11 (ALJ's Decision indicating the record was obtained post-hearing). Dr. Torres prescribed Buspirone and instructed Plaintiff to return in six weeks. Tr. at 592. So, Dr. Torres documented then-current counseling and likely management of mental health by Plaintiff's primary care physician, but there were no additional records obtained.

In the Decision, the ALJ found Plaintiff had no severe mental limitations. Tr. at 13. Ultimately, in determining the RFC, the ALJ assigned no mental restrictions. Tr. at 15. In making findings on Plaintiff's mental functioning, the ALJ stated that Plaintiff "has not received specialized mental health treatment, and none of her health providers seem to have determined such a referral was necessary." Tr. at 14. The ALJ also "note[d] that both State agency experts . . . opined [Plaintiff's] mental impairments are nonsevere," Tr. at 14, but both experts made their findings "given [the] available evidence presented," Tr. at 100, 107.

Under these circumstances, the ALJ failed to fully and fairly develop the record on Plaintiff's mental limitations, and there are evidentiary gaps resulting in clear prejudice. In sum, the ALJ's stated reasons for declining to accept Dr. Hatton's opinion were partially of the SSA's own doing (not asking Dr. Hatton for a more detailed assessment) and otherwise insufficient (because of the ALJ's finding that the opinion appeared based on subjective reports while at the same time declining to obtain objective evidence); the ALJ did not obtain hardly any treating mental health evidence despite knowing of its existence; and the ALJ relied almost exclusively on nonexamining opinions rendered without the benefit of treating mental health evidence. Plaintiff suffered clear prejudice by not having a fully developed record on her mental limitations before the ALJ found she had none. Reversal with remand is required.

## V.  Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Fully and fairly develop the record on Plaintiff's mental limitations;

(B) If appropriate, address Plaintiff's other argument in this appeal; and

(C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 25, 2024.

_____
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record